```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                        CHARLESTON
```

**DELORIS A. CHAPMAN,**

    **Plaintiff,**

**v.**                                          **CASE NO. 2:10-cv-00403**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**


### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff, Deloris Ann Chapman (hereinafter referred to as "Claimant"), filed applications for SSI and DIB[1] on March 24, 2006, alleging disability as of May 1, 2004, due to herniated disc, coronary artery disease and breathing problems. (Tr. at 135-37,

---

[1] Claimant met the insured status requirements of the Social Security Act for DIB purposes through September 30, 2009. (Tr. at 63.)

141-45, 150.)  The claims were denied initially and upon reconsideration.  (Tr. at 77-81, 82-85, 94-96, 97-99.)  Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 101.)  A hearing was held on July 16, 2007, before the Honorable Andrew J. Chwalibog.  (Tr. at 28-53.)  The ALJ continued the hearing so that Claimant could undergo a consultative mental examination.  (Tr. at 28-53.)  A supplemental hearing was held on February 4, 2008.  (Tr. at 7-27.)  By decision dated March 10, 2008, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 61-76.)  The ALJ's decision became the final decision of the Commissioner on January 28, 2010, when the Appeals Council denied Claimant's request for review.  (Tr. at 1-3.)  On March 28, 2010, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  See <u>Blalock v. Richardson</u>, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential

evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2008). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2008). The Commissioner must show two things: (1) that

3

the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 63.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of degenerative disc disease and chronic back pain syndrome, obesity, chronic obstructive pulmonary disease/asthma, and depressive disorder. (Tr. at 63.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 65.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 67.) As a result, Claimant cannot return to her past relevant work. (Tr. at 74.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as office helper, hand packer, mail addresser and assembler, which exist in significant numbers in the national economy. (Tr. at 75.) On this basis, benefits were denied. (Tr. at 76.)

Scope of Review

The sole issue before this court is whether the final decision

of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was fifty years old at the time of the administrative hearing. (Tr. at 33.) Claimant completed the eleventh grade. (Tr. at 33.) In the past, she worked as a convenience store manager. (Tr. at 49.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

The record includes treatment notes and other evidence from FamilyCare. (Tr. at 206, 211-24.) The treatment notes dated February 15, 2006, March 10, 2006, and April 7, 2006, show treatment for angina, hypertension, shortness of breath, and coronary artery disease. (Tr. at 211, 214, 218.) A treadmill stress test on March 6, 2006, was negative for ischemia. (Tr. at 215.) A pulmonary function study on March 17, 2006, showed mild, restrictive ventilatory defect, normal total lung capacity and moderate reduction in diffusion capacity for carbon monoxide. (Tr. at 213.) At FamilyCare, Claimant saw Laura Marino, NP on at least two occasions. (Tr. at 214, 218.) She prescribed medication, including Paxil, Norvasc and HCT2. (Tr. at 206, 217.)

On April 18, 2006, Kurt M. Nellhaus, M.D. examined Claimant for shortness of breath. Claimant had gained twenty-five pounds in the last year. Pulmonary function studies showed mild restriction spirometry but lung volumes were normal. Diffusion capacity was normal when considering alveolar volume. Dr. Nellhaus's impression was dyspnea, though he stated that he could not totally exclude airways disease. He was primarily concerned about the possibility of coronary artery disease. Claimant had symptoms consistent with obstructive sleep apnea. (Tr. at 225-27.)

Claimant was hospitalized on May 30, 2006, for chest pain. She was kept overnight and discharged with noncardiac chest pain and elevated liver function tests. (Tr. at 229.) Chest x-rays on May 30, 2006, showed no evidence of acute cardiopulmonary disease. (Tr. at 231.) A myocardial perfusion study on May 31, 2006, showed a subtle area of fixed perfusion defect in the inferolateral apical segment on both stress and rest imaging. This may represent diaphragmatic attenuation artifact as there is normal wall motion. However, small infarct cannot be excluded. Otherwise, it was an unremarkable dual-isotope myocardial perfusion study. (Tr. at 232-33.)

On June 22, 2006, Kip Beard, M.D. examined Claimant at the request of the State disability determination service. Dr. Beard diagnosed chest pain, atypical of angina, shortness of breath, consider asthma, chronic low back pain with chronic left radicular symptoms and cardiac murmur, suggestive of aortic stenosis. (Tr. at 243.) Dr. Beard observed that Claimant's

> history of chest pain sounds atypical for angina. The examination of the heart today reveals a cardiac murmur that sounds consistent with aortic stenosis. Heart was regular rate and rhythm. There was no congestive heart failure. Regarding shortness of breath, lung exam today reveals diminished breath sounds without wheezes, rales, or rhonchi and no appreciable exertional dyspnea or accessory muscle recruitment.
>
> Regarding the back, the examination reveals complaints of moderate pain on motion testing with tenderness, motion loss, and some spasm. Straight leg raising negative. Neurologic negative for any findings of radiculopathy. The claimant's gait was a bit guarded in appearance,

>associated with complaints of back pain. She required no
>ambulatory aids.

(Tr. at 243.)

On July 6, 2006, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform light work, with occasional postural limitations (except an inability to climb ladders, ropes and scaffolds), and a need to avoid concentrated exposure to extreme heat, cold, vibration, fumes, odors, dusts, gases, poor ventilation and hazards. (Tr. at 244-51.)

On October 3, 2006, a State agency medical source confirmed the opinion of the State agency medical source referenced above. (Tr. at 255.)

On July 11, 2007, Ms. Marino completed a Medical Assessment of Ability to do Work-Related Activities (Physical) on which she opined that Claimant could lift only five pounds occasionally. Claimant can stand/walk uninterrupted for ten minutes and sit for a total of four hours at a time. Ms. Marino opined that Claimant could occasionally climb and balance, that she should never stoop, crouch, kneel or crawl, that she was limited in reaching in all directions, handling, fingering and feeling and that she could occasionally reach, handle, finger and feel. Finally, she stated that Claimant should not engage in excessive standing due to hip osteoarthritis and morbid obesity. (Tr. at 261-63.)

Ms. Marino also completed a Residual Functional Capacity

Mental Impairment Questionnaire on which she opined that Claimant was markedly limited in "[t]he ability to complete a normal work day and work week without interruption" and to "complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length or rest periods." (Tr. at 264-66.)

On July 13, 2007, Mareda L. Reynolds, M.A. examined Claimant at the request of her counsel. Ms. Reynolds diagnosed major depressive disorder, recurrent, severe with psychotic features and generalized anxiety disorder on Axis I and personality disorder with dependent borderline features on Axis II. She rated Claimant's GAF at 45. (Tr. at 273.)

Ms. Reynolds completed an assessment on which she opined that Claimant was moderately to markedly limited in a number of areas. (Tr. at 274-76.)

On August 20, 2007, a State agency medical source examined Claimant following the administrative hearing at the request of the ALJ. Elizabeth Durham, M.A. diagnosed major depressive disorder, recurrent, moderate on Axis I and made no Axis II diagnosis. (Tr. at 280.)

Ms. Durham completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) and opined that Claimant had moderate limitations in all areas. (Tr. at 283-85.)

Following Ms. Durham's examination, the ALJ propounded

interrogatories to Stuart Gitlow, M.D. , a medical expert. (Tr. at 287-91.) The ALJ asked Dr. Gitlow to identify Claimant's mental impairments supported by the record from May 1, 2004, to the present, and whether they met or equaled the listings.

In response, Dr. Gitlow wrote that by strict definition, the medical evidence did not show the presence of psychiatric disease and that the evidence is far more suggestive of a mild level of dysthymia, adjustment disorder with depressed mood, or possibly a mild major depression. However, Dr. Gitlow wrote that giving the examiners of record (Reynolds and Durham) the benefit of the doubt, Claimant does not meet or equal a listing. (Tr. at 298.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the hypothetical question was incomplete and misrepresented Claimant's limitations; (2) the ALJ failed to afford controlling weight to the opinions of her treating physicians, particularly because one was not a specialist; and (3) the ALJ erred in rendering a vague and improper residual functional capacity finding that did not account for limitations related to Claimant's obesity. (Pl.'s Br. at 2-7.)

The Commissioner argues that (1) the ALJ's residual functional capacity assessment and corresponding hypothetical question to the vocational expert accounted for all of Claimant's limitations; (2) the ALJ's mental residual functional capacity assessment provided

10

an adequate level of specificity; and (3) substantial evidence supports the ALJ's evaluation of opinion evidence from Ms. Marino. (Def.'s Br. at 9-16.)

Claimant argues first that the ALJ erred in making his residual functional capacity finding because it failed to take into account Claimant's obesity and the additional limitations it poses when considered in combination with Claimant's remaining impairments. Claimant asserts that the ALJ erred in failing to incorporate a sit/stand option in the residual functional capacity finding and in finding that Claimant can occasionally balance, stoop, kneel, crouch and crawl. (Pl.'s Br. at 3-4.)

"[W]hen determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00Q (2008); see also SSR 02-1p, 2000 WL 628049, at *1 (Sept. 12, 2002) (Obesity must be considered when evaluating impairments under the listings and when assessing a claim at other steps of the sequential evaluation process.).

The court proposes that the presiding District Judge find that the ALJ properly considered Claimant's obesity, and his findings in that regard are supported by substantial evidence. In his

decision, the ALJ found that Claimant's obesity to be severe, and observed that "[w]ith regard to the claimant's obesity, it was indicated in the past that the claimant's weight was an aggravating factor with regard to the claimant's chronic back pain and she continues to weigh in excess of 270 pounds on a body frame of only 67 inches." (Tr. at 64.)  In determining whether Claimant met or equaled the listings, the ALJ specifically stated that "[p]ursuant to SSR 02-1p, I have also considered the claimant's obesity and the combined effect of her impairments, and while the claimant's obesity may increase the severity of coexisting and related impairments, the evidence does not establish presumptive disability."  (Tr. at 65.)  In evaluating Claimant's subjective complaints, the ALJ acknowledged Claimant's limitations in ambulating and movement of the hips and knees.  (Tr. at 72.)

Finally, the ALJ's residual functional capacity finding reflects a consideration of the limitations related to Claimant's obesity.  The ALJ limited Claimant to light work; no climbing of ladders, ropes or scaffolds; no more than occasional climbing of stairs/ramps, balancing, stooping, kneeling, crouching, or crawling; avoidance of concentrated exposure to temperature extremes, smoke, fumes, odors, dusts, pollutants, irritants, vibration, unprotected heights and hazards; moderate limitation in the ability to understand, remember, and carry out simple and complex instructions, make judgments on simple and complex work-

related decisions, interact appropriately with the general public, supervisors, and coworkers, and to respond appropriately to ususal work situations and to changes in a routine work setting. (Tr. at 67.)

The ALJ's residual functional capacity finding is supported by and reflective of substantial medical evidence of record and appropriately contemplates limitations related to Claimant's obesity. The ALJ did not err in failing to include a sit/stand option in his residual functional capacity finding or in finding that Claimant can occasionally balance, stoop, kneel, crouch and crawl. Dr. Beard did not indicate a sit/stand option was appropriate. Claimant was able to ambulate with a mildly guarded gait and without a limp. She could stand unassisted. (Tr. at 241.) None of the State agency sources recommended such a limitation and the postural limitations are consistent with their opinions. (Tr. at 245, 249, 255.) Finally, the evidence from Ms. Marino does not support such a limitation. (Tr. at 211-24.)

Next, Claimant argues that the ALJ erred in ignoring the opinion of her "treating physician" Ms. Marino on the assessment she completed. Claimant asserts that the ALJ rejected this opinion, in part, because Ms. Marino did not provide accompanying treatment notes to document supportive findings. However, Claimant asserts that Ms. "Marino's treatment notes are found in the transcript at pages 211-224." (Pl.'s Br. at 5.) Claimant asserts

13

that Ms. Marino's treatment notes are "inexplicably illegible in the record (Transcript pgs. 211, 214, 218-220)" though they were legible when sent to the Commissioner. Claimant suggests that the ALJ had a duty to recontact Ms. Marino pursuant to 20 C.F.R. §§ 404.1512(e) and 416.912(e) (2008). (Pl.'s Br. at 5.) In a related vein, Claimant complains that the ALJ rejected Ms. Marino's opinion because she was not a specialist, and instead was a family practitioner. (Pl.'s Br. at 6.)

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2008). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency (5) specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(i) and 416.927(d)(2)(i) state that the longer a treating source treats

14

a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

The court proposes that the presiding District Judge find that the ALJ properly weighed the evidence of record from Ms. Marino, and his findings are supported by substantial evidence.

In his decision, the ALJ explained that he afforded little weight to the assessment completed by Ms. Marino because

> [s]he does not provide accompanying treatment notes to document supportive findings, and there are no other treating or medical source opinions to address with regard to the claimant's physical impairment, and no evidence to support that a greater degree of physical restriction is warranted. Treatment is very limited overall, with regard to the claimant's back condition, prior testing revealed no evidence of frank disc herniation (Exhibit 1F).

(Tr. at 68.)

Regarding Ms. Marino's assessment related to Claimant's mental impairments, the ALJ later states that

15

> [t]here is no medical evidence of record to support prescription of psychotropic medication or to assess progress, and again, for reasons to be set forth later, she is not afforded full credibility. While an essentially disabling assessment has been submitted by Dr. Laura Marino, such assessment appears to be out of Dr. Marino's area of expertise, given her primary speciality as a family practitioner, and the evidence as a whole does not support that the claimant would be 'markedly' limited ... as assessed by Dr. Marino. Dr. Marino does not provide accompanying treatment notes to reflect supportive objective findings and/or observations, and repeat mental status evaluation as well as the claimant's reported daily regimen does not support such a degree of mental restriction.

(Tr. at 70.)

The ALJ's reasons for rejecting the opinions of Ms. Marino on the above-referenced assessments are perfectly acceptable and in keeping with the applicable regulations. First, as the Commissioner points out, Ms. Marino is a nurse practitioner[2], and, therefore, is not a "medical source," but instead is considered an "other source" whose opinion **may** be considered by the Commissioner. 20 C.F.R. §§ 404.1513 and 416.913(d) (2008). Furthermore, the ALJ gave good reasons for rejecting her opinions on both assessments. As to Claimant's physical limitations, Ms. Marino did not provide accompanying treatment notes that supported her opinion. Whether the ALJ knew or not that the two treatment notes were from Ms. Marino, they do not support her extreme opinion on the assessment

---

[2] Ms. Marino is referred to as a nurse practitioner at pages 217 and 225 of the Transcript.

about Claimant's physical limitations.[3] Furthermore, as the ALJ points out, there is no other treating or other evidence supporting such limitations. (Tr. at 68.)

Likewise, regarding Ms. Marino's opinion about Claimant's mental limitations, Ms. Marino was not a psychologist or psychiatrist and thus, the ALJ's statement that her assessment was "out of [her] area of expertise, given her primary speciality as a family practitioner" is a logical one. (Tr. at 70.) Furthermore, the ALJ reasoned that

> despite her complaints of severe mental impairment and limitation, the claimant has not sought formal mental health treatment to date nor has she required crisis intervention and/or inpatient stabilization. There is no medical evidence of record to support prescription of psychotropic medication or to assess progress and [Claimant] is not afforded full credibility.

(Tr. at 70.) The ALJ's statement is a true one, and Claimant does not refute it. Finally, the ALJ explained that the medical evidence of record simply was not consistent with the limitations opined by Ms. Marino. (Tr. at 70.)

The ALJ's findings related to Ms. Marino's opinions on both assessments are supported by substantial evidence, and the court proposes that the presiding District Judge so find.

Finally, Claimant argues that the ALJ's residual functional capacity finding was vague and improper as to the mental

---

[3] Claimant asserts that the evidence from Ms. Marino was illegible, but the court's transcript was legible and the ALJ's decision gives no indication that his was not legible.

17

limitations contained therein. Claimant notes the moderate limitations cited above related to Claimant's mental impairments and points out that the ALJ defined moderate as more than slight, but the individual is still able to sit and function satisfactorily. (Tr. at 21). (Pl.'s Br. at 6-7.) Claimant complains that "in terms of vocational abilities, it does not allow one to understand how often the claimant can interact appropriately with the general public, supervisors, or coworkers.

The ALJ adequately defined "moderate" within his hypothetical question, and the vocational expert identified a significant number of jobs. (Tr. at 21-22.) Claimant's argument is unconvincing, and the court proposes that the presiding District Judge so find.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this

court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

    March 10, 2011  
    Date

    *Mary E. Stanley*  
    Mary E. Stanley  
    United States Magistrate Judge